PEOPLE ex rel. VENNER v. NEW YORK LIFE INS. CO.

(Supreme Court, Appellate Division, First Department.   February 9, 1906.)

1. CORPORATIONS—STOCKBOOKS—INSPECTION—STOCKHOLDERS' RIGHTS.

The right of stockholders to inspect the stockbook of the corporation, in a proper case, is a common-law right independent of the right conferred by Laws 1892, p. 1831, c. 688, § 29.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 674–685.]

2. INSURANCE—MUTUAL COMPANIES—POLICY HOLDERS—LISTS—INSPECTION.

Where a mutual life insurance company, having neither stock nor stockholders and not bound by statute to keep a list of its policy holders, kept no such list, except a card index, on which, in addition to the names and addresses, was also written other information of a private nature, containing the occupation, age, and race of the insured, the name of the beneficiary, the amount and plan of the policy, the dividend, class, premium, etc., it could not be compelled by mandamus to disclose such index plant to a small group of policy holders for the alleged purpose of enabling them to solicit such policy holders to act in unison in the election of trustees for the company.

Houghton, J., dissenting.

Appeal from Special Term, New York County.

Application for writ of mandamus by the people, on relation of Clarence H. Venner, against the New York Life Insurance Company. From an order granting a peremptory writ, respondent appeals.   Reversed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

John G. Milburn and Carter, Ledyard & Milburn (James H. McIntosh and Langdon P. Marion, on the brief), for appellant.

Stephen M. Yeoman (George H. Yeaman, of counsel), for respondent.

CLARKE, J.   This is an appeal from a final order directing the issue of a peremptory writ of mandamus commanding the defendants, the New York Life Insurance Company, its president and secretaries, to forthwith permit the petitioners and their agents, attorneys, and assistants, to inspect any and all records of the said New York Life Insurance Company, which show who are the policy holders of the defendant, and to copy therefrom the names and post-office addresses of all of the policy holders, during business hours, at the principal office thereof in the city of New York; and to give the petitioners and their said attorneys, agents, and assistants all reasonable facilities for doing the same.

The petition alleges that Venner and the 91 other petitioners are policy holders in the defendant company; that said company is a corporation organized and existing under the laws of the state of New York engaged in the business of life insurance; that it has no capital stock and no stockholders, and is entirely an insurer of lives upon the mutual plan, "and by the terms of its charter and the laws of New York, each holder of a life insurance policy issued by the said company is a member of the corporation and is entitled to vote at every election of trustees thereof"; that the petitioners desire to obtain

full and free conference and consultation with other .policy holders of the company, with the view to lawfully and properly influencing the election of trustees, and this they cannot do without a list of the names and addresses of other policy holders; that an application for leave to inspect the books of the company to obtain such names and addresses had not been complied with, and therefore they prayed for the issuance of a writ of mandamus.

In answer, it is alleged that the number of policies now- in force. amounts to 750,000, or thereabouts; that there are no books in which the list of the names and addresses of policy holders are entered; that the department of the company in which are contained the records which furnish most of the data desired by petitioners is known as the "Division of Policy Briefs"; that these records consist of cards numerically arranged, each policy ever issued by the company having its card, whether now in force or not; that there are probably a million and a half of these cards; that even these cards do not give the addresses of all the policy holders whose policies are in force; that these cards contain, in addition to the name and address, a variety of information, the occupation, race, and age of the insured, the name of the beneficiary, the amount and plan of the policy, the dividend class, the premium, and other matters; that these cards are constantly in use by the officers and employés of the company, and that to allow another force of clerks access to these records, in addition to the examination now going on by the commissioners of five states, would .make it impracticable for the company to carry on its business. It is further alleged that the petitioner Venner is notoriously a professional litigant, and is well and widely known for acquiring small interests to create controversies, to obstruct the consummation of important corporate transactions; and there are incorporated ·extracts from various judicial records and published opinions of various state and federal courts tending to establish that allegation.

There is no statute authorizing the inspection here demanded. Section 3 of the general corporation law (Laws 1892, p. 1801, c. 687) provides that:

"A stock corporation is a corporation having a capital stock divided into shares, and which is authorized by law to distribute to the holders thereof dividends or shares of the surplus profits of the corporation."

Section 29 of the stock corporation law (Laws 1892, p. 1831, c. 688) provides that:

"Every stock corporation shall keep at its office * * * a book to be known as the stock book, containing the names alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof, and the amount paid thereon. The stock book of every such corporation shall be open daily, during business hours, for the inspection of its stockholders and judgment creditors, who may make extracts therefrom."

A penalty is provided for failing to keep such book open for inspection, as therein required. By this provision a duty is imposed upon the stock corporation, and a clear legal right conferred upon the stockholder. Upon a denial of this right it is the duty of the

court to issue its writ of mandamus. "To the extent that an absolute right is conferred by statute, nothing is left to the discretion of the court; but the writ should issue as a matter of course, although even then, doubtless, due precautions may be taken as to time and place, so as to prevent interruption of business or other serious inconvenience." Matter of Steinway, 159 N. Y. 263, 53 N. E. 1107, 45 L. R. A. 461.

But the defendant company is not a stock corporation; nor is the petitioner a stockholder therein. It is not required by law to keep a stockbook, and it does not keep any stockbook, for it has no stock. It is not required to keep a book containing the names and addresses of policy holders, and it does not keep any such book. No legal obligation has been violated by it in not keeping such a book, and the petitioner has not been deprived of any clear statutory right upon which a mandamus issues as a matter of course. But it is claimed, and it is true, that the right to inspect the stockbook given by statute is not exclusive; that irrespective of the statute there exists a common-law right to inspect, in proper cases, the books of a corporation, which can be enforced by mandamus. The issuance of this writ is, however, not a matter of strict right, but is discretionary. In the Matter of Steinway, 159 N. Y. 263, 53 N. E. 1107, 45 L. R. A. 461, Judge Vann said:

"We think that, according to the decided weight of authority, a stockholder has the right at common law to inspect the books of his corporation at a proper time and place, and for a proper purpose; and that, if this right is refused by the officers in charge, a writ of mandamus may issue, in the sound discretion of the court, with suitable safeguards to protect the interests of all concerned. It should not be issued to aid a blackmailer, not withheld simply because the interest of the stockholder is small; but the court should proceed cautiously and discreetly according to the facts of the particular case."

Proceeding cautiously and discreetly, according to the facts of the particular case at bar, it appears that the principal petitioner is not a stockholder, and is not possessed of the rights of a stockholder. He is a policy holder in a mutual life insurance company. The relation between a policy holder and the mutual company in which he is insured is primarily one of contract measured by the terms of his policy. Uhlman v. New York Life Ins. Co., 109 N. Y. 429, 17 N. E. 363, 4 Am. St. Rep. 482, and cases cited. He has by his policy (his contract with the company) the right to vote for trustees. There are many rights which a stockholder has in relation to his company which a policy holder does not possess. The stockholder has the right to participate in the making of by-laws, to vote upon questions referred to the stockholders by the directors, and to bring suit for the benefit of the company, where the directors upon proper request refuse. The stock owned by him makes him the equitable owner of an undivided fractional part of the future assets of the company. Flynn v. Brooklyn City R. R. Co., 158 N. Y. 504, 53 N. E. 520. The policy holders may, and do, hold many different kinds of policies. The policy holder has no power to participate in the management of the company, further than is given by his contract and the charter of the company; in this instance to vote for trustees. Before the maturity of his policy, he is the holder of an unmatured claim against the company; after

its maturity, he is a general creditor with a liquidated claim. The stockholders rights in the profits of the business flow from his proprietary interest, and have no analogy to the rights of a contract creditor. The right to inspect the books of the corporation, and to take extracts therefrom, is one of the rights which belong to him as a proprietor. It does not seem to me that the analogy between policy holders and stockholders is sufficiently strong to extend to policy holders, by reason of such claimed analogy, rights which heretofore have been conceded to stockholders as such. While the assertion of the desire to confer with the other policy holders, in order that after such conference an intelligent and concerted effort may be made to elect an efficient board of trustees, is most persuasive, and at the first blush almost compels the granting of the motion for an inspection; yet it is the duty of the court to take into consideration the interests, not only of the 91 petitioners, but of the 750,000 other policy holders not here personally represented. If this order should be affirmed, it would be impossible to confine the information for which petitioner asks to the mere names and addresses of policy holders. The card index kept by this company, not in obedience to any law, but for its own convenience, contains much information to which the petitioner is not entitled, and which very many policy holders would deeply resent being made public. It is a well-known peculiarity of human nature that many men regard their insurance matters as private and personal, and resent inquiries in regard thereto, and would be deeply offended if such matters were made known. The names of the beneficiaries, the amounts and terms of the policies are entered on these cards. To have such information put in the hands of irresponsible outsiders would be regarded by men of such susceptibilities as an outrage. In the absence of a law compelling it, we regard such an invasion of private rights as unwarranted.

The possession of the names and addresses of the 750,000 policy holders of this company might be a most valuable asset in unscrupulous hands. The solicitations these policy holders might be exposed to, the offers that might be made to them to exchange their policies for others, might result in great harm and loss to many innocent, inexperienced, and easily influenced men. We are bound upon such an application, addressed to our discretion, to look at all sides of the question. A number of applications have been made for this information. If one policy holder is entitled to it, all are. The exclusive possession of this list by one policy holder, or by a small group of policy holders, might be exceedingly harmful. The court has no power, even under the common-law right of visitation and mandamus, to compel the sending of the information to all policy holders. It can, at the most, only allow inspection. The result of a general and continued demand to turn a force of outsiders into this company's office would be intolerable. Such an application in the past has, it appears, never been granted. It appears that some years ago the insurance department asked for this list; but, upon the presentation of the considerations as to the nature of the relations between the company and the policy holders, the request was dropped and has never been renewed. We have been considering this application as having been made in good faith. There

is much in the answering papers which would tend to throw doubt upon the motive of the moving parties. Not regarding that as controlling, we think that so long as no statute requires the keeping of such a list, so that the names and addresses can be readily taken without other information, such a mandamus as the one at bar ought not to be granted.

The discretion of the Special Term was improperly exercised; and the order must be reversed, and the application for the writ denied, with $50 costs and disbursements to the appellant. All concur, except HOUGHTON, J., who dissents.