IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEPHEN KERR EUGSTER,<br><br>        Appellant,<br><br>     v.<br><br>PAULA C. LITTLEWOOD, Executive<br>Director of the WASHINGTON STATE<br>BAR ASSOCIATION in her official<br>capacity, and the WASHINGTON<br>STATE BAR ASSOCIATION,<br><br>        Respondents. | No. 81435-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — After the Washington State Bar Association (WSBA) denied Stephen Eugster's request for membership records in a particular electronic format, he sued the WSBA and its former executive director seeking the same records. The trial court dismissed the complaint, determined that Eugster's suit was frivolous, and entered a judgment awarding attorney fees to the defendants. Through General Rule (GR) 12.4, the Washington Supreme Court has established the exclusive means to obtain bar records. Eugster's argument to the contrary is untenable. The trial court properly dismissed the complaint and did not abuse its discretion in granting the defendants' motion for attorney fees or in determining the amount of fees. We affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

## I. BACKGROUND

Attorney Stephen Eugster has filed a number of lawsuits against the WSBA in state and federal court in both his personal and representative capacities.[1] Those cases have mainly involved the issues of mandatory bar membership, license fees, and the WSBA's discipline system. This litigation, involving the duty of the WSBA to generate and provide records upon request, is apparently the most recent area of dispute.

In July 2016, Eugster submitted a request for records to the WSBA's public records officer using the process outlined in GR 12.4 ("Washington State Bar Association Access to Records"). He requested "[m]ember names, admit dates, bar no. and e-mail addresses." The public records officer informed Eugster that the information he sought is publicly available through the online lawyer directory maintained by the WSBA and referred him to the WSBA's policies on mailing lists. According to its policy, the WSBA does not provide lists of members' public e-mail addresses except in three limited circumstances

---

[1] See, e.g., Eugster v. Wash. State Bar Ass'n, No. CV 09-357-SMM, 2010 WL 2926237 (E.D. Wash. July 23, 2010) (discipline system); Eugster v. Wash. State Bar Ass'n, No. C15-0375JLR, 2015 WL 5175722 (W.D. Wash. Sept. 3, 2015) (membership/fees), aff'd, No. 15-35743, Docket #18-1 (9th Cir. Mar. 21, 2017); Eugster v. Wash. State Bar Ass'n, No. 15204514-9 (Spokane County Super. Ct., Wash. 2015) (discipline system); Eugster v. Littlewood, No. 2:15-CV-0352-TOR, 2016 WL 3632711 (E.D. Wash. June 29, 2016) (discipline system); Eugster v. Wash. State Bar Ass'n, No. 2:16-cv-01765 (W.D. Wash. 2016) (membership/fees and discipline system); Eugster v. Wash. State Bar Ass'n., 198 Wn. App. 758, 397 P.3d 131 (2017) (discipline system); Eugster v. Littlewood, No. 2:17-CV-0392-TOR, 2018 WL 2187054 (E.D. Wash. May 11, 2018) (compelled membership); Caruso v. Wash. State Bar Ass'n, No. C17-003 RSM, 2017 WL 1957077 (W.D. Wash. May 11, 2017) (court order) (compelled membership); Eugster v. Wash State Bar Ass'n, noted at 11 Wn App. 1067 (2020) (defamation, civil rights violation, and other). Each of these lawsuits was dismissed at the pleadings stage.

involving vendors of continuing legal education programs, candidates for the WSBA Board of Governors, and WSBA sections. Eugster requested internal review of the decision by the WSBA's executive director, who affirmed the decision of the public records officer. See GR 12.4(h)(1).

Eugster then requested "external" review by the records request appeals officer. See GR 12.4(h)(2). In his briefing, Eugster made it clear that he wanted information about bar members to be delivered in "digital format," specifically in a "data file" that was compatible with certain software, such as "Excel, Word Perfect, Quattro Pro." The records request appeals officer denied the appeal, concluding that Eugster had the opportunity to view bar member information, which satisfied the "access" requirement of the rule. See GR 12.4(c)(1) (defining "access" as "the ability to view or obtain a copy of a Bar record."). The appeals officer also noted that the WSBA has no obligation to create records or provide information in a "more user-friendly" format. See GR 12.4(c)(2) ("Nothing in this rule requires the Bar to create a record that is not currently in the possession of the Bar at the time of the request.")

Eugster sought discretionary review by the Washington Supreme Court. GR 12.4(h)(2). The court denied review, based on the lack of "probable error" that would warrant the exercise of the court's "supervisory action."

About six months later, in November 2017, Eugster sent a letter to the WSBA's executive director, seeking the same information, again, in a digital format. The executive director responded that Eugster's request was duplicative of his previous request, which had been fully resolved in 2016. The executive

director informed Eugster that his request was "completed and closed" and that any new request must be submitted in writing to the public records officer as set forth in GR 12.4.

Representing himself, Eugster then filed a "Petition for Declaratory Judgment and Writs of Mandamus to the WSBA and its Executive Director" in superior court.[2] Eugster set forth the substance of his November 2017 correspondence with the WSBA's executive director. He asserted a "common law right to the records requested in the form requested" and sought both declaratory judgment and a writ of mandamus directing the WSBA to supply the requested information in digital format. Shortly after suing, he filed a motion for summary judgment.

The WSBA and its executive director (collectively, the WSBA) moved to dismiss the petition. The WSBA asserted, among other things, that Eugster failed to state a valid claim for relief because GR 12.4 exclusively governs access to WSBA records. Following a hearing on the parties' cross motions, the court denied Eugster's motion, granted the WSBA's motion, and dismissed Eugster's complaint with prejudice.

The WSBA then filed a motion for an award of attorney fees under RCW 4.84.185 for the fees incurred in defending against Eugster's lawsuit. Following a hearing, the court granted the motion. In its written findings and conclusions, the court concluded that Eugster's legal claim was "foreclosed by a

---

[2] We rely on Eugster's "Corrected" petition, filed on November 28, 2017, the day after he filed his initial pleading. Eugster filed a third "amended" petition in December 2017, but later withdrew that filing.

4

plain reading of GR 12.4" and his complaint was frivolous and "advanced without reasonable cause."

The WSBA moved for an award of $66,800, the amount of fees incurred. The WSBA supplied documentation to support the fees billed by its counsel. Eugster opposed the amount of fees requested and sought sanctions. After a hearing, the court found that the "rates negotiated and paid by the WSBA were reasonable," and that while ultimately frivolous, responding to Eugster's claims required substantial effort. After deducting specific billing entries to avoid potential duplication, the court awarded fees of $58,114.50 to the WSBA. Eugster appeals.

## II. ANALYSIS

When addressing the WSBA's motion to dismiss Eugster's complaint, the trial court considered materials outside the pleadings. Under CR 12(b)(6), a defendant may move to dismiss a plaintiff's pleadings that fail to state a claim for which relief can be granted. But if the court considers matters outside the pleadings when deciding a dispositive motion under CR 12(b)(6), the motion must be treated as one for summary judgment under CR 56. CR 12(b)(7); Berst v. Snohomish County, 114 Wn. App. 245, 251, 57 P.3d 273 (2002). Thus, we review the decision on the motion under summary judgment standards. Berst, 114 Wn. App. at 251.

We review summary judgments de novo. Specialty Asphalt & Constr., LLC v. Lincoln County, 191 Wn.2d 182, 191, 421 P.3d 925 (2018). The moving party is entitled to summary judgment as a matter of law "when there is no

5

genuine issue as to any material fact." Id. We construe all facts and inferences in favor of the nonmoving party to determine whether an issue of material fact exists. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Id.

The relevant facts here are not in dispute. The determinative issue is whether Eugster has a common law right of "[m]ember access" to WSBA records that allows him to avoid the requirements and parameters of GR 12.4. We review de novo this question of law. See Blueberry Place Homeowners Ass'n v. Northward Homes, Inc., 126 Wn. App. 352, 358, 110 P.3d 1145 (2005).

Eugster relies on authority from other jurisdictions, and mainly on an early 20th century case decided by the Supreme Court of Pennsylvania, McClintock v. Young Republicans of Philadelphia, 210 Pa. 115, 59 A. 691 (1904) (member of an incorporated association was entitled to inspect membership list in order to oppose organizational policies, the election of certain officials, and advocate new directions). According to Eugster, this authority establishes a common law right to the records he seeks from the WSBA and supports the position that he is not bound by the procedural requirements and substantive measures set forth in GR 12.4. He is wrong on both counts.

Under Washington precedent, a common law right to access and inspect corporate records does not apply outside the context of shareholder investors in traditional stock corporations. See State ex. Wicks v. Puget Sound Savings & Loan Ass'n, 8 Wn.2d 599, 602, 113 P.2d 70 (1941) (common law right of

6

inspection not applicable to savings and loan association because such associations and their members are significantly different from "ordinary stock companies" and shareholders); Save Columbia CU Comm. v. Columbia Cmty. Credit Union, 134 Wn. App. 175, 193, 139 P.3d 386 (2006) (applying Wicks to conclude no right to inspect records, given the state's "extensive regulatory oversight" and fundamental differences between credit union members and corporate shareholders). Without question, the WSBA is not an ordinary stock company and its members are not corporate shareholders.

The WSBA, created by the State Bar Act of 1933, RCW 2.48 et seq., operates under the authority of the judicial branch and its functions are directly "related to and in aid of" the judiciary.[3] Wash. State Bar Ass'n v. State, 125 Wn.2d 901, 907, 890 P.2d 1047 (1995). "The ultimate power to regulate court-related functions, including the administration of the Bar Association, belongs exclusively" to the Washington Supreme Court. Id. at 909.

> One of the basic functions of the judicial branch of government is the regulation of the practice of law. The Bar Association is sui generis and many of its functions are directly related to and in aid of the judicial branch of government. It is important to keep in mind in this connection that the Bar Association does not receive any appropriation from the Legislature or any other public body. It is funded entirely by mandatory membership licensing fees and various user fees, including continuing legal education (CLE) revenues, bar examination fees, practice section dues and *Washington State Bar News* advertising revenues. [The Washington State Supreme Court's] control over Bar Association functions is not limited to admissions and discipline of lawyers. The control extends to ancillary administrative functions as well.

---

[3] The state bar existed as a voluntary professional association between 1888 and 1933. Graham v. Wash. State Bar Ass'n., 86 Wn.2d 624, 626-27, 548 P.2d 310 (1976).

Id. at 907-08 (internal footnotes omitted); see also GR 12.2 (exercising "inherent and plenary authority to regulate the practice of law in Washington, the Supreme Court authorizes and supervises the Washington State Bar Association's activities"). As the Ninth Circuit has held, state bar associations are considered an arm of the state because they operate as of the "investigative arm" of the state high court. O'Connor v. Nevada, 686 F.2d 749, 750 (9th Cir. 1982) (state bar association immune from suit in federal court under eleventh amendment); Hirsh v. Justices of the Supreme Court of the State of Cal., 67 F.3d 708, 715 (9th Cir. 1995) (accord).

Even if there were a reason to look beyond the law of this state, Eugster provides no authority that persuasively supports his position. McClintock, for instance, does not involve a state bar association operating under the auspices of the judiciary. And the court's acknowledgment in that case of a "right of a stockholder" to "inspect the records and books," including the "list of members," tracks Washington law. McClintock, 210 Pa. at 118. In another case Eugster cites, the New York Court of Appeals simply recognized a common law right of shareholders to inspect the books and records of a corporation. Ochs v. Washington Heights Fed. Sav. and Loan Ass'n, 17 N.Y.2d 82, 87, 268 N.Y.S.2d 294, 215 N.E.2d 485 (1966). And in line with the analysis in Wicks and Save Columbia CU, to determine whether the right of inspection applied to a federally chartered savings and loan association, the Ochs court considered whether the "specific characteristics" of the association were "analogous to those of a stock corporation." Ochs, 17 N.Y.2d at 86. Viewing the facts in the light most

8

favorable to Eugster, he fails to establish a common law right of access or inspection that applies to the WSBA.

And regardless of any common law right that may have existed, the text of GR 12.4 adopted by our Supreme Court in 2014 reflects the court's "plenary authority" and the intent to provide the exclusive means to obtain WSBA records. GR 12.2. The rule is broad in its scope and "governs the right of public access to Bar records." GR 12.4(b). The rule encompasses both the substantive requirements and the procedural process and does not distinguish between requests of members and nonmembers. The rule requires the appointment of a public records officer to whom "all records requests shall be submitted." GR 12.4(e)(1) (emphasis added). The failure to define the term "public" does not create any ambiguity.

Eugster relies on the uncontroversial proposition that, without law to the contrary, our courts adopt and reform common law and rely on it to address gaps in the law. See RCW 4.04.010; see also In re Parentage of L.B., 155 Wn.2d 679, 689, 122 P.3d 161 (2005). But again, he fails to establish an applicable common law right to the records he seeks. Moreover, court rules carry the "force of law," and there is no uncertainty or gap to fill since GR 12.4 governs all requests for WSBA records. Banowsky v. Backstrom, 193 Wn.2d 724, 741, 445 P.3d 543 (2019). Eugster seeks access to bar records outside the process set forth in GR 12.4. Because Eugster failed to establish a common law right to access bar

9

records that allows him to circumvent the process established by GR 12.4, the court properly dismissed his complaint.[4]

Eugster next challenges the court's decision to award attorney fees to the WSBA under RCW 4.84.185.

RCW 4.84.185 authorizes the superior court to award the prevailing party reasonable expenses, including attorney fees, when an action is frivolous and advanced without reasonable cause. Bldg. Indus. Ass'n v. McCarthy, 152 Wn. App. 720, 745, 218 P.3d 196 (2009). "A lawsuit is frivolous if, when considering the action in its entirety, it cannot be supported by any rational argument based in fact or law." Dave Johnson Ins. v. Wright, 167 Wn. App. 758, 785, 275 P.3d 339, 275 P.3d 339 (2012). An award is warranted under RCW 4.84.185 when a "reasonable inquiry" would have revealed that the plaintiff's position was untenable. Kearney v. Kearney, 95 Wn. App. 405, 416-17, 974 P.2d 872 (1999). The purpose of such as award is to "discourage frivolous lawsuits and to compensate the targets of such lawsuits for fees and expenses incurred in fighting meritless cases." Kearney, 95 Wn. App. at 416 (quoting Biggs v. Vail, 119 Wn.2d 129, 137, 830 P.2d 350 (1992)). A finding of bad faith or bad motivation is not required. Highland Sch. Dist. No. 203 v. Racy, 149 Wn. App. 307, 311-312, 202 P.3d 1024 (2009).

---

[4] Because we conclude that Eugster failed to establish a legal basis for his request for bar records outside the process set forth in GR 12.4 and the trial court properly dismissed his complaint on this basis, we do not reach the other bases for dismissal raised by the WSBA.

We review a trial court's ruling on a motion for an award of attorney fees for an abuse of discretion. Kearney, 95 Wn. App. at 416. The court abuses its discretion in denying fees when governing law clearly demonstrates the plaintiff's claims were invalid. Kearney, 95 Wn. App. at 416.

Eugster contends that the court's findings do not support its decision to award fees, because the court only "discussed" his claim of a common law right of access to bar records, and did not find the claim to be frivolous. He maintains that his claim was "not dismissed." But the record is clear that the trial court dismissed Eugster's entire petition. And in its order granting the motion for attorney fees and expenses, the court found that Eugster's assertion of a common law right to records was not "debatable." The court also found that Eugster's action was "frivolous in its entirety and advanced without reasonable cause, in violation of RCW 4.84.185." The court's findings support its decision to award attorney fees and Eugster fails to show an abuse of discretion.[5]

Finally, Eugster challenges the amount of the fee award. A trial judge has broad discretion in determining the reasonableness of an attorney fee award, and to reverse that award, the opponent must show that the trial court manifestly abused its discretion. Ethridge v. Hwang, 105 Wn. App. 447, 460, 20 P.3d 958 (2001); Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 147, 859 P.2d 1210 (1993).

In determining reasonable attorney fees, the trial court must first calculate the "lodestar figure." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581,

---

[5] Nothing in the court's findings or in the record as a whole supports Eugster's characterization of the court's decision as an "ad hominem attack."

11

597, 675 P.2d 193 (1983). This figure represents the number of hours reasonably expended (discounting hours spent on unsuccessful claims, duplicated effort, and otherwise unproductive time) multiplied by the attorney's reasonable hourly rate. Bowers, 100 Wn.2d at 597. Generally, the trial court must enter findings of fact and conclusions of law supporting its award of attorney fees so the reviewing court can determine whether the trial court exercised its discretion on tenable grounds. Brand v. Dep't of Labor & Indus., 139 Wn.2d 659, 674, 989 P.2d 1111 (1999).

Without elaboration, Eugster asserts that the court awarded an "unreasonable" and "extraordinary" amount of fees. He also contends that the court did not adequately explain the amounts deducted from the WSBA's counsels' proposal. We disagree.

The court calculated the presumptively reasonable lodestar amount, finding that the hourly rates of between $235 and $295 were reasonable in view of prevailing market rates, particularly considering the attorneys' experience representing public entities and particular experience representing the WSBA in other lawsuits. Counsel requested $66,800, the actual amount of fees charged, explaining that the attorneys billed at a "discounted blended rate" for this case. The court noted that the WSBA's counsel collectively spent 263.6 hours on the case. The court found that the amounts billed were generally warranted given the procedural history and nature of Eugster's claims. The court made certain reductions to avoid potentially duplicative efforts, and specifically listed all

reductions in its written order. The court found that, after such reductions, the resulting 232 net hours were reasonably expended.

Eugster does not specifically contend that the rates charged were unreasonable. And apart from a vague allegation of "overstaffing," does not identify any particular billing entries that he believes were improper. He fails to show that the amount of attorney fees awarded constitutes an abuse of discretion.

Eugster also appears to raise a claim of error based on entry of the judgment against him without notice of a presentment as required by CR 54(f)(2) ("No order or judgment shall be signed or entered until opposing counsel has been given 5 days' notice of presentation and served with a copy of the proposed order or judgment"). Even assuming error, procedural error in entry of a judgment does not invalidate the judgment unless the complaining party shows resulting prejudice. Burton v. Ascol, 105 Wn.2d 344, 352, 715 P.2d 110 (1986). A party who is able to timely appeal and argue any issues is not prejudiced. Burton, 105 Wn.2d at 352–53. Under this standard, Eugster fails to show prejudice.

In the concluding sentence of his supplemental opening brief, Eugster requests attorney fees on appeal, citing CR 11 and RAP 18.1. Eugster presents no cognizable argument and establishes no basis for an award. See RAP 18.1(b) (requiring party to "devote a section of its opening brief to the request for the fees or expenses."); see also In re Marriage of Brown, 159 Wn.

App. 931, 938-39, 247 P.3d 466 (2011) (pro se litigant is generally not entitled to attorney fees).  We deny the request.[6]

In conclusion, we affirm the order dismissing Eugster's complaint, the order granting the WSBA's motion for attorney fees, and the judgment and order awarding $58,114.50 in attorney fees to the WSBA.

Affirmed.

_____
Chun, J.

WE CONCUR:

_____       _____
Brunner, J                        Andrus, A.C.J.

---

[6] In addition, we do not consider materials attached as appendices to Eugster's briefing that are not included in the record below.  See RAP 10.3(a)(8) (appendix may not include materials not contained in the record on review without permission from the appellate court).