[No. 30538. Department Two. September 2, 1948.]

CARRIE SPOONER CASE, *Appellant*, v. THE CITY OF BELLINGHAM *et al., Respondents.*[1]

[1] Reported in 197 P. (2d) 105.

R. W. *Greene*, for appellant.

*Joseph T. Pemberton*, for respondents.

BEALS, J.—Carrie Spooner Case, as plaintiff, by her complaint filed September 13, 1945, instituted this action against the city of Bellingham, a municipal corporation, and L. J. Van Keulen, as defendants, alleging that the defendant city of Bellingham was a municipal corporation, being a city of the first class; that, at all times referred to in her complaint, plaintiff owned, as her separate property, lot 9, block 17, of Central Whatcom Addition, a platted portion of defendant city; that, March 30, 1942, the city of Bellingham instituted cause No. 26929 in the superior court for Whatcom county, asking for the foreclosure of a delinquent special assessment against the property above described; that plaintiff's residence and post-office address was then 160 Sheridan road, Hubbard Woods, Illinois, and that plaintiff never received, through the mails, any notice of the institution of the action.

Plaintiff further alleged that the summons filed in the foreclosure action stated that the first publication thereof was April 8, 1942, but that, in fact, there was no publication of the summons on the date mentioned and that the first publication thereof was April 15, 1942; that the summons was directed to her and other defendants in that action; that the attorney for the city filed a motion for an order of

default against plaintiff, July 2, 1942, together with his affidavit that the plaintiff had made no appearance in the action; that, on the date the motion and affidavit were filed, an order of default was entered against the plaintiff, and, July 2, 1942, a judgment was entered by the court, foreclosing the city's lien against plaintiff's property and many other real-estate descriptions; that no order of sale of the property was ever filed or entered, nor any return of sale or confirmation thereof filed; that the city purported to sell plaintiff's property to itself, and that, thereafter, the city sold the property to defendant L. J. Van Keulen for six hundred dollars and conveyed the property to him by deed.

Plaintiff alleged that she first learned of the entry of the judgment, in the action instituted by the city, during the month of May, 1945; that, because of irregularities in the foreclosure proceeding, some of these irregularities being hereinabove referred to, the purported judgment, sale, and deed were null and void, constituting a cloud upon plaintiff's title to her property.

The plaintiff further alleged that, September 12, 1945, she tendered to the treasurer of defendant city the sum of $150.90, being the amount claimed by the city as due by way of principal and interest upon the assessment against her property, for nonpayment of which the city had instituted the foreclosure action; that the city treasurer refused the tender, and that plaintiff had paid the above amount into court for the benefit of defendants.

Plaintiff prayed for a decree declaring the judgment rendered in the city's foreclosure action null and void; that the cloud upon plaintiff's title to the property, by reason of that judgment and the sales pursuant thereto, be removed; that plaintiff be decreed to be the owner of the property, free and clear of any claim or lien against the property on the part of defendants; that the defendant city be required to accept the sum paid into court for defendants' benefit, and that she have judgment for her costs.

The defendants' demurrer to plaintiff's complaint having been overruled, the defendants jointly answered, denying plaintiff's ownership of the property, admitting the insti-

tution of the action brought by the city to foreclose assessments, alleging that plaintiff had received notice of the foreclosure action against her property, denying that there were any irregularities in the foreclosure proceeding or the sale to the city, admitting that the defendant city had sold the property to defendant Van Keulen; that plaintiff had tendered to the city $150.90, and that the tender had been refused.

By way of an affirmative defense, the defendants alleged the levy of an assessment against plaintiff's property, and other properties, during the year 1939; that, the assessment against plaintiff's property being unpaid, the defendant city instituted an action for foreclosure thereof; that judgment of foreclosure was entered, and the property sold and conveyed to defendant city, which acquired title thereof October 23, 1944; and that, thereafter, defendant city, by deed dated March 27, 1945, conveyed the property to defendant Van Keulen. Defendants prayed that the action be dismissed.

Plaintiff's demurrer to the affirmative defense contained in defendants' answer having been overruled, plaintiff filed her reply, denying the material allegations of the affirmative defense.

The action came on regularly for trial, March 11, 1947, and resulted in the entry of findings of fact and conclusions of law in defendants' favor, followed by a decree dismissing the action and quieting title to the property above referred to in defendant Van Keulen.

Plaintiff's motion for a new trial having been denied, she has appealed to this court from the decree dismissing the action.

Appellant assigns error upon the court's order overruling appellant's demurrer to respondents' affirmative defense, contained in their answer; upon the entry of the decree appealed from, and upon the denial by the trial court of appellant's motion for a new trial. Appellant also assigns error upon the refusal of the trial court to make certain findings of fact and conclusions of law requested by appel-

lant, and upon the entry of several findings of fact and conclusions of law made by the trial court.

Respondents apparently assume that this action constitutes a collateral attack upon the judgment entered in the assessment foreclosure proceeding.

By her complaint herein, appellant directly assails the judgment in the foreclosure proceeding, alleging its complete illegality and that it is void for want of jurisdiction to enter the same, and prays that her title to the property be quieted as against respondent city, upon appropriation, by the city, of the amount due the city on account of the assessment, which amount, it is admitted, appellant tendered into the court at the time of the institution of this action.

In the case of *Silverstone v. Totten*, 50 Wash. 447, 97 Pac. 491, an action to avoid certain tax foreclosure proceedings and the sale of real estate thereunder, the plaintiff alleged facts which, it was contended, showed that the judgment of foreclosure was void for want of jurisdiction. From a decree in plaintiff's favor, the defendants appealed. This court, speaking through Hadley, C. J., said:

"Appellants concede that the summons described was insufficient but they make the contention that, inasmuch as a period of seventy-eight days elapsed between the time of the close of the publication period and the entry of judgment, there was ample time to have published a new summons in conformity with the new law, and that inasmuch as the decree recited that the notice was regularly and duly served, it should now be presumed that such a new publication was made. It may be true, under the decisions of this court, that such a presumption should prevail as conclusive in a case of a collateral attack on a judgment. But it cannot be conclusive when the judgment is directly attacked. In the latter case the judgment is entitled to the presumption in its favor in the first instance, but that may be overcome by proof. This action is a direct attack upon the foreclosure judgment. It is a suit in equity for the express purpose of avoiding the judgment and the proceedings thereunder."

The judgment was affirmed.

In *Hembree v. McFarland*, 55 Wash. 605, 104 Pac. 837, also an action to avoid a judgment foreclosing delinquent taxes against real estate, the court said:

"We have held that an action identical with this in all respects was a direct attack in equity upon the foreclosure judgment. *Silverstone v. Totten*, 50 Wash. 447, 97 Pac. 491.

"In *Gould v. White, supra* [54 Wash. 394, 103 Pac. 460], which was a case like this, we said:

" 'In this case the appellants proved that the defendants in the tax foreclosure proceedings did not appear, and were not personally served with process, and produced a record showing nothing beyond the publication of a void summons. This, in our opinion, made out a *prima facie* case in their behalf; the presumption in favor of jurisdiction was overcome, and the burden of proof shifted to the respondents to show that a valid service of process was made.'

"And in *Holly v. Munro, ante* p. 311, 104 Pac. 508, we said:

" 'But, in any event, the recital of jurisdiction is only *prima facie* evidence.'

"These decisions are based upon the theory that the attack was direct upon the tax foreclosure judgment."

■ In the case at bar, the foreclosure action was instituted by respondent city pursuant to the provisons of the first section of Laws of 1933, chapter 9, p. 119, Rem. Rev. Stat. (Sup.), §§ 9386, 9386-1, 9386-2, 9386-4. The statute cited amended Laws of 1927, chapter 275, § 5, p. 660, and established two alternative methods by which a city or town might proceed to foreclose liens against real estate, existing in its favor on account of delinquent local improvement assessments.

By the method provided in the 1933 amendment, contained in § 1 of that act, any city or town was authorized to proceed with the foreclosure of delinquent assessments, or any installments thereof,

". . . by proceedings in court therefor in an action brought in its own name in the superior court in the county in which such city or town is situate . . ."

After providing for the mailing, by the treasurer, of notices to record owners of property to be included in the foreclosure, and the filing of proof of such mailing with the clerk of the court, § 1 of the act continues by stating, in subd. b, that several foreclosures may be consolidated in one action, the proceeding to be

" . . . initiated by filing with the clerk of the court a certificate of the treasurer of such city or town setting forth a description of each such separate lot, . . ."

upon which an assessment or installment thereof is delinquent, with other information as to the name of the owner, the amount of the assessment, and so forth.

Section 1, subd. c, of the act, reads, in part, as follows:

"Upon the filing of such certificate the treasurer of such city or town shall, with such legal assistance as the city council may provide, proceed with such foreclosure by summons served exclusively by publication in one general notice describing the property as the same is described upon the assessment rolls. Said summons shall be published once each week for four successive weeks in the official newspaper of such city or town, or if such city or town has no official newspaper in any weekly newspaper published in the county in which such city or town is situate, and shall require the defendants and each of them to appear and answer said summons within sixty days from the date of the first publication thereof. The publication of such summons shall be sufficient service thereof on all persons interested in the property described therein. . . ."

The first section of the act continues by prescribing other procedures to be followed in the course of the trial, and in the entry of judgment, sale of the property, and redemptions thereof.

Section 2 of the act provides another method of foreclosure, by any city or town, of delinquent special assessments.

Section 2, subd. b, provides, *inter alia,* that all real estate subject to the lien of delinquent installments of an assessment may be proceeded against in the same action, and all parties interested, known or unknown, be impleaded therein.

By § 2, subd. c, it is provided that the actions shall be initiated by the filing of a complaint, describing the allegations to be contained therein.

Section 2, subd. f, reads, in part, as follows:

"All sales shall be subject to the right of redemption within two years from date of sale. The service of summons, and all proceedings except as herein otherwise prescribed, including appeal, order of sale, sale, redemption,

and issuance of deed, shall be governed by the statutes now or hereafter in force relating to the foreclosure of mortgages on real property. . . ."

The two methods provided by the act for the enforcement of liens in favor of cities and towns, on account of special assessments, differ in several basic particulars.

The proceeding instituted by respondent city, in this action attacked by appellant, was brought pursuant to the method prescribed by § 1 of the act. As above noted, such a foreclosure proceeds by summons served exclusively by publication in one general notice, the summons to be published as provided in § 1, subd. c, *supra.*

A municipality proceeding to foreclose delinquent assessments by the alternative mode of procedure provided by § 2 of the act, must ". . . be governed by the statutes now or hereafter in force relating to the foreclosure of mortgages on real property. . . ." § 2, subd. f, *supra.*

This latter provision, governing an entirely different foreclosure proceeding from that followed by respondent city herein, cannot be held to control the procedure to be followed by a city or town in foreclosing delinquent assessments pursuant to the first method provided for by the act.

The foregoing is pertinent to the matter to be here determined, for the following reasons:

Upon the trial of this action before the superior court, there were introduced in evidence, pursuant to a stipulation of the parties in open court, certified copies of the files in cause No. 26929 of the records of the superior court for Whatcom county, in which proceeding respondent city had foreclosed local improvement assessments, including the assessment against appellant's property which is the subject matter of this action. This file is before us, as part of the statement of facts on this appeal, and includes the original summons for publication in the foreclosure, the city treasurer's affidavit of mailing notice, and his certificate for foreclosure.

There is also included the affidavit of Murriel Swank, dated June 30, 1942, filed July 2, 1942, in which the affiant stated "that she is the Bookkeeper of Bellingham Labor

News," a weekly newspaper of general circulation in Whatcom county, and that the summons in the foreclosure action, of which a printed copy is attached to the affidavit, was printed in each number of the newspaper published and circulated April 15, 22, 29, and May 6, 1942, followed by a further description of the above-named newspaper.

There follows, in the file, a motion for default, filed by respondent city's then attorney in the foreclosure action, based upon his affidavit dated July 2, 1942, in which the affiant deposed that he was the city attorney of Bellingham and made the affidavit on behalf of the city, the plaintiff in the action. The affidavit continues:

". . . that all defendants herein have been duly served with Summons by publication in the manner provided by law. That due proof of such publication has been filed herein, which Affidavit of Publication is hereby referred to and by reference made a part hereof."

The affidavit further states that no defendant had appeared in the action, and that each defendant was in default therein.

The file then contains an order of default, signed and filed July 2, 1942, entering the default of the defendants in the action and each of them. After describing the subject matter of the action, the order continues:

". . . and it appearing to the court that Notice and Summons herein has been duly and regularly served upon the defendants in said cause, and each of them, by publication in the Bellingham Labor News, the official newspaper of the City of Bellingham, Washington, for the time and in the manner provided by law, and that more than sixty (60) days has elapsed since the date of the first publication of said Summons and Notice, and that said defendants and each of them are in default herein by reason of their failure in any manner to appear or file or serve herein any Notice of Appearance or any pleading of any nature whatsoever."

The file next discloses a judgment of foreclosure, signed and filed July 2, 1942, foreclosing the delinquent assessments, or installments thereof, against the descriptions contained in the summons, including the description of appellant's property.

The section of Laws of 1933, chapter 9, p. 119, above referred to, pursuant to which respondent city instituted and conducted the foreclosure of its assessment liens, contains no reference to any specific form of the proof to be filed, stating the manner or form of the return of service showing due publication of the summons in the proceeding, nor does this portion of the act state by whom such proof of service of the summons shall be made.

The general statute prescribing the proof of service of a summons is found in Rem. Rev. Stat., § 237 [P.P.C. § 2-39], subd. 3 of which reads as follows:

"Proof of service shall be as follows:— . . .
"3. In case of publication, the affidavit of the printer, publisher, foreman, principal clerk or business manager of the newspaper showing the same, together with a printed copy of the summons as published; or . . ."

This is the only statute prescribing the method by which proof of service of a summons by publication, in a civil action pending in the superior court, may be made. Of course, if a defendant voluntarily appears in the action, he submits himself to the jurisdiction of the court, but no appearance in the foreclosure action was made by appellant, and the judgment of foreclosure against her property is based solely upon the publication of the summons referred to, and upon the subsequent proceedings in the action which we have enumerated.

The question of the sufficiency of the affidavit of publication of the summons was not referred to by the parties in their respective briefs, but, during the argument of the case, the attention of counsel was called to the form of the return of service, and supplemental briefs have been filed by the parties, in which that question is discussed.

Respondents contend that no specific form of affidavit of publication is required, or any proof thereof "other than general proof of the publication." This argument might be more persuasive if the case at bar were, in fact, a collateral attack upon the judgment in the foreclosure proceeding; but, as above stated, the action is a direct attack upon that judgment.

■ After the argument, respondents filed in the office of the clerk of this court the affidavit of Murriel Swank, dated June 18, 1948, in which the affiant states that, from April 1, 1942, and, thereafter, until and including June 30, 1942, she was the business manager of the Bellingham Labor News, which was the official newspaper of the city of Bellingham; that she made the affidavit by way of a supplement to the affidavit of publication of summons which she signed June 30, 1942, wherein it was stated that she was the "bookkeeper" for the newspaper, and that the word "bookkeeper" was included in the affidavit by inadvertence.

Respondents apparently ask us to consider this affidavit as amending and supplementing the record in the foreclosure proceeding. This, of course, we cannot do. It has been held that a court of general jurisdiction may correct its own records to make them speak the truth, but any application for correction of a judicial record must be made to the court in the proceeding in which the record sought to be corrected appears. Under no circumstances could the record in the foreclosure proceeding be changed, altered, or supplemented in any way by action of the superior court in the case at bar, or, of course, by this court. *Wehr v. Craver*, 87 Wash. 214, 151 Pac. 502.

It is not to be supposed that the legislature intended that there should be no statute establishing the method by which the publication of a summons, pursuant to the first section of chapter 9, Laws of 1933, should be proved. The publication of a summons is provided for, and the contents of the summons and its effect, as due process of law, defined in § 1, subd. c, *supra*. The notice to be published is a "summons," that word having a well-recognized meaning.

Section 2, subd. f, of the statute, provides that, in a proceeding instituted by a city or town for the foreclosure of delinquent assessments, the service of the summons and other proceedings in the action ". . . shall be governed by the statutes now or hereafter in force relating to the foreclosure of mortgages on real property. . . ."

Respondents argue that, as, in § 2 of the act, the legislature included the provision last referred to, but failed to

include any such provision in subd. c of § 1, there is no statutory procedure by which proof of publication of a summons shall be made in an action brought under the first section of this statute.

By § 1, subd. c, the legislature made the publication of a summons valid service upon all defendants in the proceeding, whether residents or nonresidents; but, must the service of the summons be proved in accordance with Rem. Rev. Stat., § 237, subd. 3, *supra*? The question is novel and important.

In 1 Sutherland Statutory Construction (3d ed.) 488, § 2022, is found the following text:

"A general statute applies to all persons and localities within its jurisdictional scope, prescribing the governing law upon the subject it encompasses, unless a special statute exists to treat a refinement of the subject with particularity or to prescribe a different law for a particular locality. The subsequent enactment of a statute which treats a phase of the same general subject matter in a more minute way consequently repeals *pro tanto* the provisions of the general statute with which it conflicts. Likewise where a later statute adapted for a particular locality conflicts with a general law of state-wide application, the special or local law will supersede the general enactment. Where, however, the later special or local statute is not irreconcilable with the general statute to the degree that both statutes cannot have a coterminous operation, the general statute will not be repealed, but the special or local statute will exist as an exception to its terms."

In 61 C. J. 1109, Taxation, § 1501, the following text appears:

"As in actions generally, service of summons in a statutory form is necessary in tax foreclosure proceedings to give the court jurisdiction. The statute must be strictly followed. The contents of the summons are controlled by provisions of the tax law notwithstanding the manner of service may be regulated by the general law relating to service of summons in civil actions."

In the case of *Seattle v. Doran,* 5 Wash. 482, 32 Pac. 105, 1002, this court considered the matter of proof of the publi-

cation of a notice, as presented to the city council, calling attention to the fact that it did not appear that the city charter or any ordinance of the city required a proof of publication to be preserved by the city clerk in any particular way. The case is not in point, as the question here presented concerns statutes of the state, not merely procedure before a city council.

In the case of *Noland v. Arnold*, 77 Wash. 363, 137 Pac. 801, this court called attention to the fact that statutory requirements as to the manner of service of a summons and similar requirements as to the contents of a summons

". . . are two different matters, and that the requirements of one do not necessarily control the other. The commingling of these requirements in § 233 of the general law is apt to lead to confusion unless careful discrimination be exercised. Section 97 of the revenue law then in force made specific provision as to what the summons should state as to the time within which the defendant was required to appear. This provision, we think, was then applicable to all summonses in tax foreclosures, whether served personally or by publication, and was not in any wise controlled by the provisions of § 233 of the general law, though that law was to be looked to to determine the manner of service by publication, which, however, was another matter."

Chapter 9, Laws of 1933, p. 119, provides for actions to be instituted in the superior court by a city or town, and defines generally the procedure to be followed, § 1 of the statute differing, in some particulars, from Rem. Rev. Stat., § 233, as to the publication and the form of the summons to be published. In many respects, the form of summons provided for by the section last referred to is followed.

The following texts are important in this connection:

"Proof of publication must be made in the form and manner directed by the statute, and is generally considered essential to the jurisdiction, although it has been held that, since it is the fact, and not the proof, of publication which gives the court jurisdiction, such proof may be supplied at any time, even after final judgment." 61 C. J. 1153, Taxation, § 1560.

"The affidavit of publication of summons must be made by one of the persons designated in the statute, if any. And the affiant must swear to the fact that he occupies one of the positions named, the mere fact that he designates himself as printer, or foreman, or principal clerk, being insufficient." 2 Bancroft's Code Practice and Remedies 1372, § 949.

In the case of *Rockwood v. Turner,* 89 Wash. 356, 154 Pac. 465, this court decided the question which is now under consideration. The action was instituted by the plaintiff for the purpose of setting aside a tax judgment and sale, and quieting his title to land conveyed by a tax deed. The trial court entered judgment in favor of the defendant and dismissed the action, from which judgment the plaintiff appealed.

The appellant, *inter alia,* contended that the judgment in the tax foreclosure action was void, because the proof of publication of the summons was by way of an affidavit of a person describing himself as the *cashier* of the newspaper in which the summons was published. In the course of the opinion, we said:

"The record affirmatively shows that the only summons served in the foreclosure action was served by publication. Subdivision 3 of Rem. & Bal. Code, § 237 (P. C. 81 § 167), provides that proof of service of summons by publication shall be by 'the affidavit of the printer, publisher, foreman, principal clerk or business manager of the newspaper,' etc. The proof filed in the foreclosure suit is not by either printer, publisher, foreman, principal clerk, or business manager, but is made by a person who describes himself as the cashier of the newspaper. . . .

"The proposition is similar to a case where a statute should require personal service to be made by a sheriff or his deputy who should make return thereof. If personal service were made by some other officer of a summons otherwise correct in form and if properly served conferring jurisdiction upon the court, yet a return made by some other officer or person than the one prescribed by statute would be ineffectual and confer no jurisdiction upon the court.

"It is contended, however, by respondent that the recital of the judgment in a foreclosure proceeding imports absolute verity; citing *Merz v. Mehner,* 57 Wash. 324, 106 Pac.

1118, and *McHugh v. Conner*, 68 Wash. 229, 122 Pac. 1018. If the record of a court is silent as to a jurisdictional fact for the purpose of upholding the judgment, it will be presumed that the fact was duly made to appear to the court. But when it appears from the record that such fact was made to appear by a certain means, it will not be presumed that it was also made to appear otherwise or by additional means. *Neff v. Pennoyer, supra* [3 Sawyer 274].

"Here the record shows that the proof of service was by the affidavit of the cashier of the newspaper, and there is no other proof of service, and a motion for default by the attorney for the plaintiff was based upon the affidavit of such cashier and the affidavit of the attorney and upon publication of summons only. The order of default made by the court merely recited that the defendants had been 'duly and regularly served with summons and notice herein, as required by law, and that more than sixty days have elapsed since the day of said service, and that said defendants, and each of them, are now in default.'

"The findings of fact, conclusions of law, and judgment in the foreclosure case merely referred to the order of default, and made no other recital of service. The record affirmatively shows that the service was not proven as required by law. The affidavit of the cashier of the publication of a summons was not the affidavit required by statute, and conferred no jurisdiction upon the court in the foreclosure proceedings based thereon. It was therefore void."

This court reversed the judgment appealed from, and remanded the cause, with instructions to enter a decree in favor of the appellant, quieting his title to the land in suit upon his complying with the tender alleged in his amended complaint.

The case cited is directly in point upon the question of the invalidity of the return of service of the published summons.

It is contended that a recital contained in the judgment entered in the assessment foreclosure proceeding conclusively establishes a lawful service of the summons. In this connection, we call attention to references hereinabove made to the affidavit of publication of the summons, the affidavit filed by respondent city's then counsel in support of his motion for default, and the order of default entered July 2, 1942.

No findings of fact or conclusions of law were entered in the assessment foreclosure proceeding. The judgment entered July 2, 1942, after some preliminary recitals, continues:

" . . . and it appearing to the court from the records and files in said cause, that service herein has been had by Summons served exclusively by publication in one general notice in the manner and form required by law, by publication of said Summons for publication in foreclosure of delinquent L.I.D. assessments in the Bellingham Labor News, a newspaper qualified under the Statutes of this State, which said newspaper is the official newspaper of the City of Bellingham, Washington, once each week for four (4) successive weeks, commencing with the issue of said paper dated *April 15th, 1942,* . . . "

 This court has held that recitals in a judgment are entitled to great weight.

In the early case of *Nolan v. Arnot,* 36 Wash. 101, 78 Pac. 463, this court reversed an order of the superior court vacating a judgment entered in a tax foreclosure, the order having been based upon the ground "that the publication of summons was insufficient." In the course of the opinion, appears the following:

"It has been the uniform holding of this court that the recitation in a judgment of jurisdictional facts, sufficient to give the court jurisdiction to pronounce the judgment, is proof of such jurisdiction."

The opinion does not refer to the matter of whether or not the questions presented to the court involved a direct or collateral attack upon the tax foreclosure judgment. Apparently, the case involved a direct attack on the judgment, but the opinion cites and relies upon the case of *Ballard v. Way,* 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993, in which questions were presented involving a collateral attack upon a tax foreclosure judgment.

The court also cited several of our decisions referred to in the case of *Ballard v. Way,* but examination of those cases indicates that they either refer to collateral attacks on judgments or present questions different from that here under consideration.

It may be noted that the judgment which was reversed went beyond a mere vacation of the original judgment, and the opinion does not disclose the reasons assigned by the respondent in support of his contention that the court lacked jurisdiction to enter the original judgment, although the court apparently approved the doctrine that a presumption of jurisdiction over the person is assumed, which is not overcome by the fact that the record otherwise shows no service of process.

In the case of *Silverstone v. Totten,* 50 Wash. 447, 97 Pac. 491, an action to avoid certain tax foreclosure proceedings, it appeared that the summons, as published, was void, in that it did not conform to the law in effect during the period that the summons was being published. It was, however, contended by the appellant, who was the owner of the tax title under attack, that, as the judgment foreclosing the delinquent taxes "recited that the notice was regularly and duly served," it should be presumed, in the action then before the court, that a new and correct publication of the summons had been made, it appearing that there was sufficient time, prior to the entry of the judgment, for such a publication. Concerning this contention, we requote from the opinion:

"It may be true, under the decisions of this court, that such a presumption should prevail as conclusive in a case of a collateral attack on a judgment. But it cannot be conclusive when the judgment is directly attacked. In the latter case the judgment is entitled to the presumption in its favor in the first instance, but that may be overcome by proof. This action is a direct attack upon the foreclosure judgment. It is a suit in equity for the express purpose of avoiding the judgment and the proceedings thereunder."

In *Gould v. White,* 54 Wash. 394, 103 Pac. 460, in reversing a judgment of the superior court dismissing an action to set aside tax judgments, this court, speaking through Rudkin, C. J., said:

"This court has presumed more in favor of the validity of judgments than most courts, but there must be some limit beyond which we may not go, or we might better declare the presumption absolute and incontrovertible. In this

case the appellants proved that the defendants in the tax foreclosure proceedings did not appear and were not personally served with process, and produced a record showing nothing beyond the publication of a void summons. This, in our opinion, made out a *prima facie* case in their behalf; the presumption in favor of jurisdiction was overcome, and the burden of proof shifted to the respondents to show that a valid service of process was made. Any other rule would require the appellants to explore every possible avenue through which service might be made, and produce as witnesses the manager or editor of every newspaper or periodical in King county in which a summons might lawfully be published, to prove a mere negative."

It may be noted that this court reached the result indicated, although the original tax judgment contained the following recital:

" 'This cause coming on regularly for trial this day, and it appearing to the satisfaction of the court that the notice and summons in said cause was regularly and duly served on the above named defendants as the law in such cases requires, and more than sixty days have elapsed since said service and defendants having failed, neglected and refused to appear and contest, or to make any appearance at all in said action or to pay the amount due.' "

In the case of *Hembree v. McFarland,* 55 Wash. 605, 104 Pac. 837, this court followed the case of *Gould v. White, supra,* and set aside a judgment foreclosing delinquent taxes, because of a void service of summons by publication, although the decree of foreclosure recited that the notice and summons " 'was regularly and duly served.' " In the course of the opinion, the court said:

"It is conclusively shown in the case that the court had no jurisdiction to enter the decree in the tax foreclosure case. This court has repeatedly held that summons like the one here served is void and confers no jurisdiction upon the court to render judgment."

In the case of *Wick v. Rea,* 54 Wash. 424, 103 Pac. 462, an action entirely different from that in the case at bar, it was held that, although the judgment in a tax foreclosure proceeding recited

" 'That the plaintiff herein, Thurston County, Washington, is the lawful holder of said certificates of delinquency; that summons and application for a judgment have been served in this proceeding as required by the statutes of the state of Washington, and such statutes complied with in all other respects pertaining thereto;' "

this court was committed to the doctrine that a summons in tax foreclosure proceedings must comply with the statute,

"Otherwise the court acts without jurisdiction. The rule, as stated in 17 Ency. Plead. & Prac., 45,

" 'The right to serve process by publication being of purely statutory creation and in derogation of the common law, the statutes authorizing such service must be strictly pursued in order to confer jurisdiction upon the court,'
"was adopted in *Thompson v. Robbins,* 32 Wash. 149, 72 Pac. 1043, and has been followed in the following cases: [Citing cases.]"

This case was cited in *Spaulding v. Collins,* 190 Wash. 506, 68 P. (2d) 1025.

In *Rogers v. Miller,* 13 Wash. 82, 42 Pac. 525, 52 Am. St. 20, this court, considering a judgment quieting plaintiff's title to real estate, held that a decree foreclosing a mortgage, which decree recited that service of the complaint and notice had been duly made according to law, was sufficient to support the decree entered against a collateral attack thereon, based upon the contention that the summons served was legally insufficient.

In the case of *French v. Ajax Oil & Development Co.,* 44 Wash. 305, 87 Pac. 359, an action for the recovery of a money judgment, the defendant appealed from an order of the superior court denying its motion, made by a special appearance, to set aside a judgment entered by default, the motion having been based upon the ground that the court had acquired no jurisdiction of the appellant. It appeared that the summons in the action had been personally served. The proof of service on file, by way of an affidavit bearing date December 27, 1905, stated that the person making the service was

" '. . . a citizen of the United States and of the state of Washington; that he is more than twenty-one years of

age, is not the plaintiff in the above entitled action . . . that on Saturday, December 2, 1905, he served a true copy of the summons and complaint . . .'"

The appellant contended, and this court held, that the return of service was defective, in that it did not state that, when the affiant made the service, he was over twenty-one years of age. It appeared that the judgment entered in the action recited that due and proper service of the summons had been made, but the court held that, the return of service not stating that the affiant was over twenty-one years of age when he served the summons, and the attack on the judgment being direct, the appellant's position was well taken, and the judgment appealed from was reversed. See 68 A. L. R. 389 note.

The case last cited was referred to, with approval, in *Title & Trust Co. v. Columbia Basin Land Co.,* 136 Wash. 63, 238 Pac. 992.

In *Spaulding v. Collins,* 190 Wash. 506, 68 P. (2d) 1025, it was held that a tax sale for delinquent local assessments was void for want of jurisdiction, it appearing that the property which was the subject matter of the action had not been correctly described in the foreclosure proceeding, and that a want of jurisdiction had not been cured by the presumptions accorded the tax deed pursuant to Rem. Rev. Stat., § 9386.

The case of *Matthews v. Morrison,* 195 Wash. 288, 80 P. (2d) 856, is to the same effect.

Respondents cite the case of *Colby v. Himes,* 171 Wash. 83, 17 P. (2d) 606, in which we held that certain defects in a tax foreclosure proceeding were not of such a nature as to deprive the court of jurisdiction to enter a decree of foreclosure. It was held that the procedural defects shown by the record did not go to the merits, and that the trial court had erred in entering judgment vacating the decree of foreclosure in the tax case. The case is not in point here.

In the case of *Christofferson v. Pfennig,* 16 Wash. 491, 48 Pac. 264, the court considered collateral and direct attacks upon a judgment, saying:

"What we have said requires a reversal of the judgment, but there is another point which may arise upon a re-trial of the cause, and that is as to whether the present action is a direct or a collateral attack upon the judgment aforesaid. If it is a collateral attack, the presumptions in favor of the validity of that judgment seem, under the weight of the authorities, to be conclusive. If it is a direct attack, the plaintiff would have the right to introduce evidence showing a want of jurisdiction or authority of the lower court to render the judgment."

In *Kizer v. Caufield*, 17 Wash. 417, 49 Pac. 1064, the court, referring to a void judgment, said:

"A void judgment may be attacked collaterally as well as directly. It is entitled to no consideration whatever in any court as evidence of right. But an erroneous judgment is not necessarily void and therefore subject to attack in a collateral proceeding."

In this connection, see, also, *State ex rel. Le Brook v. Wheeler*, 43 Wash. 183, 86 Pac. 394.

In *Columbia Basin Land Co. v. Peter C. Chalmers Co.*, 126 Wash. 307, 218 Pac. 217, which was an action to quiet title, brought by one claiming lands through a tax foreclosure, the court said:

"But it is urged that the judgment recites that summons was duly served as required by the statute, and that the purchaser at the sale is protected by that recital. The weakness of this position lies in the fact that, while the judgment does so recite, yet the recital is contradicted by the remainder of the record, and this is not a case where presumptions can be indulged in to sustain jurisdiction. *Wick v. Rea*, 54 Wash. 424, 103 Pac. 462; *Rockwood v. Turner*, 89 Wash. 356, 154 Pac. 465.

"Here there are more than mere defects which the presumption of jurisdiction will override, and against which the purchaser at a judicial sale will be protected. Notwithstanding the recital in the judgment, the record affirmatively shows a lack of jurisdiction to enter a judgment of foreclosure, and we see no good reason why the purchaser should not be held bound by what the record affirmatively shows."

██ Legal proof of the service of a summons, whether personally or by publication, is a jurisdictional matter. The

procedure is statutory, and the applicable statute must be followed.

In the case at bar, the proof of publication of the summons affirmatively shows that the person making the affidavit of service was not qualified, under the statute, to make such a return.

In the case of *French v. Ajax Oil & Development Co.,* *supra,* this court refused to indulge in the presumption that a person, who deposed that he was twenty-one years of age December 27th, was twenty-one years of age December 2nd.

During the trial, the attention of the trial court was not called to the form of the return of service by publication, but, as above stated, that question has been argued by counsel by way of supplemental briefs.

The many decisions of this court in cases involving recitals in judgments in tax and assessment foreclosure proceedings, and in other civil cases, are not altogether in harmony.

█ We hold that the case at bar is a direct attack upon the judgment rendered in the assessment foreclosure proceeding; that (following the case of *Rockwood v. Turner,* *supra*) the recital of due service by publication contained in the judgment is not supported by the record, which discloses no legal proof of publication of the summons, and that, upon the record before us, appellant is entitled to reversal of the judgment appealed from.

Many other matters concerning the legality of the foreclosure proceeding, and the validity of the judgment rendered therein, are argued by counsel, but, in view of our holding above stated, we shall not extend this already lengthy opinion by discussing the other questions presented.

The judgment appealed from is reversed, and the cause remanded, with instructions to enter a decree in favor of appellant, quieting her title to the property described in her complaint, as against respondents, and awarding to respondent city the amount tendered into court by appellant.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.